## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **AMERICAN NEAR EAST REFUGEE AID** <br> 1111 14th Street, N.W., Suite 400 <br> Washington, DC 20005, <br><br> *Plaintiff*, <br><br> v. <br><br> **UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT** <br> Ronald Reagan Building <br> 1300 Pennsylvania Avenue, N.W. <br> Washington, DC 20523, <br><br> <u>Serve</u>: Mr. Merrick Garland, Esq. <br> U.S. Attorney General <br> U.S. Department of Justice <br> 950 Pennsylvania Avenue, N.W. <br> Washington, DC 20530-0001 <br><br> <u>Serve</u>: Mr. Channing D. Phillips, Esq. <br> Acting U.S. Attorney for the <br> District of Columbia <br> U.S. Attorney's Office <br> 555 4th Street, N.W. <br> Washington, DC 20530 <br><br> <u>Serve</u>: Ms. Samantha Power, Administrator <br> U.S. Agency for International <br> Development <br> Ronald Reagan Building <br> 1300 Pennsylvania Avenue, N.W.. <br> Washington, DC 20523 <br><br> *Defendant*. | Civil Action No.: 1:21-cv-3184 |

1

## COMPLAINT

Plaintiff American Near East Refugee Aid ("Anera"), by counsel and pursuant to Rule 3 of the Federal Rules of Civil Procedure, files this complaint against the United States Agency for International Development ("USAID"). In support of its complaint, Anera states as follows:

### INTRODUCTION

1. In this case, Anera respectfully requests judicial review of a USAID final agency action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* ("APA").

2. Anera, a nonprofit organization incorporated in the District of Columbia, has provided humanitarian assistance to refugees in the Middle East for over fifty years. Its funding sources include governments, international organizations, foundations, corporations, and individuals.

3. Since 2005, Anera has been administering U.S. foreign aid funds, pursuant to cooperative agreements with USAID, for community and infrastructure development in the Middle East. This includes contracting with local companies in the West Bank and Gaza to perform a variety of work, including the construction of buildings, roads, and water and sanitation systems.

4. The hiring of local contractors by Anera for the USAID-funded Palestinian Community Infrastructure Development ("PCID") Program is done in accordance with U.S. law, and with USAID vetting and approval. These companies perform the work and invoice Anera. In turn, Anera, operating under a letter of credit, draws on USAID award funds to pay the contractors for their work.

5. In 2017, Anera sought and received USAID approval for a West Bank construction company, Abed El Ghaffar Doofish and Sons Company for General Contracting ("DGC"), to build a water and sanitation-related project in the West Bank with U.S. foreign aid funds. Anera and USAID both vetted DGC under U.S. anti-terrorism regulations. On May 5, 2017, USAID advised

2

Anera that DGC was eligible to receive U.S. funds for the proposed water and sanitation-related work.  **Exhibit 1**.  Based on this approval, Anera contracted with DGC to complete work valued at 4,676,880 New Israeli Shekels ("NIS"), or over $1.3 million under the then applicable currency rate.  Anera's contract required DGC to follow certain U.S. law requirements, including anti-terrorism provisions.

6. Between September 2017 and February 2018, Anera paid DGC $687,473.13 in U.S. assistance funding for work performed by DGC.

7. In 2018, after DGC completed additional work valued at 1,207,396.77 NIS (which has now risen to 1,314,543.17 NIS), USAID notified Anera that DGC was no longer eligible for U.S. foreign aid funds.  As a result, USAID declined to provide Anera the authority to use award funds to pay DGC.  No explanation was provided by USAID to support this decision.

8. For over two years, Anera has attempted to understand the basis for USAID's conclusion that, despite prior cleared vetting and approval, and continued clear vetting under the Office of Foreign Assets Control ("OFAC") and other vetting mechanisms, DGC is no longer eligible for receipt of assistance funding for work performed while DGC was deemed eligible by USAID.  For its part, USAID appears to maintain that it has or saw information showing DGC was somehow supporting or associated with terrorist activities.  To date, USAID has never, despite repeated requests, produced any evidence substantiating those allegations.

9. Meanwhile, DGC demanded arbitration against Anera in the West Bank.  Anera contested DGC's claims, but, the arbitrator awarded DGC 1,314,543.17 NIS, as well as 9% in interest (with varying accrual dates as set forth in the arbitration award).  Anera is now subject to a judgment confirmation proceeding in the West Bank simply because USAID reneged on its promise to fund DGC's work for no supported reason.

10. Anera now seeks judicial review of USAID's conclusory determination that DGC is no longer ineligible to receive U.S. assistance funding for work DGC performed with USAID approval. This conclusion is the sole basis for USAID's refusal to rescind its directive regarding the use of assistance funding to pay DGC. For the following reasons, this Court should set aside USAID's determination that DGC is ineligible for U.S. funds because it is arbitrary, capricious, and otherwise not in accordance with the law.

## PARTIES

11. Plaintiff Anera is a non-profit entity that provides humanitarian assistance and sustainable development to advance the well-being of refugees and other vulnerable communities in portions of the Middle East. Anera is a corporation organized under District of Columbia law. It maintains its principal place of business at 1111 14th Street, N.W., Suite 400, Washington, DC 20005.

12. Defendant USAID is an agency of the United States Government, and is headquartered at 1300 Pennsylvania Avenue, N.W., Washington, DC 20004.

## JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this civil action arises under the federal APA, 5 U.S.C. §§ 701-706. The Court also has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1346(a)(2) because it is a civil action against the United States founded upon an Act of Congress. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1346 because the United States government is the defendant.

14. Venue is proper in this judicial district under 28 U.S.C. § 1391 and 28 U.S.C. § 1402.

STATEMENT OF FACTS

I. <u>The Palestinian Community Infrastructure Program and Cooperative Agreement.</u>

15. USAID has been one of the largest contributors to the infrastructure sector in the West Bank and Gaza since 1994. USAID projects in those regions have included the construction and rehabilitation of roads, clinics, schools, community facilities, water systems, distribution networks, and sanitation systems, as well as food and medical assistance.

16. As part of that effort, USAID has sought to strengthen the Palestinian Water Authority's capacity to better operate and maintain its water system by improving infrastructure and providing training and hands-on technical assistance. The goal was and remains to help reduce water losses, provide safe drinking water, improve sanitation, and improve the sustainable use of limited resources for the Palestinian population.

17. One of USAID's programs implemented to achieve this goal is the PCID Program. The PCID Program aims to increase Palestinians' access to water and sanitation and support other small and medium scale community infrastructure in the West Bank and Gaza.

18. The PCID Program began in March 2013. Following a pause that began on January 31, 2019, project activities restarted June 1, 2021, and are presently set to end December 31, 2022.

19. On or about March 6, 2013, USAID and Anera entered into Cooperative Agreement No. AID-294-A-13-00005-00 ("Cooperative Agreement," attached as **Exhibit 2**) in order to achieve the objectives of the PCID Program.

20. Under the Cooperative Agreement, Anera agreed to administer USAID grant awards flowing into the region. Specifically, Anera would locate, vet, and recommend local contractors to USAID as candidates to receive USAID funds for USAID-approved infrastructure projects.

21. USAID had the authority to review and approve individual program activities before implementation, including the selection of subcontractors such as DGC. The Cooperative Agreement also charged USAID with the "[a]pproval of sub-award [r]ecipients and concurrence on the substantive provisions of subawards." **Exhibit 2** at 22-23.

II. The Selection and USAID Approval of DGC As An Eligible Subawardee.

22. In or about March 2017, Anera solicited offers from Palestinian contractors for the rehabilitation and extension of an existing water network at Ash-Shuyukh Town, Hebron Governorate.

23. After reviewing offers, Anera sought approval from USAID to proceed with an award to DGC. To facilitate the review, Anera provided USAID with information necessary to assess DGC's eligibility under USAID's foreign contractor vetting program.

24. On or about May 5, 2017, USAID advised Anera that DGC was deemed eligible to receive "an award of USAID assistance." **Exhibit 1**.

25. Relying on USAID's vetting and approval of DGC, Anera entered into a subaward agreement with DGC on or about July 3, 2017. The total value of the subaward was 4,676,880 Shekels (or over $1.3 million at that time), with a performance period from July 3, 2017 through April 29, 2018.

26. DGC performed the USAID-approved contract work from July 3, 2017 through April 2018 (although Anera followed up to ensure a punch list of items was completed).

27. February 28, 2018 was the last date Anera paid DGC for work successfully performed. As of that date, Anera had paid DGC a total of $687,473.13. In order to make those payments, Anera received approval from USAID to pay DGC under Anera's letter of credit arrangement with USAID.

28. DGC also incurred 1,207,396.77 NIS for additional work performed under the subcontract.

29. Anera contemplated extending the terms of the contract with DGC and accordingly, resubmitted DGC's credentials to USAID for re-vetting on or about April 20, 2018—approximately nine (9) days before the scheduled end of performance period, and fifteen (15) days before USAID's initial vetting approval expired.

III. <u>USAID's Sudden and Unexplained Reversal of DGC's Eligibility.</u>

30. On or about June 6, 2018, USAID notified Anera that DGC "is not eligible to receive assistance funded by USAID effective June 4, 2018." **Exhibit 3**. USAID did not identify what information had led to this ineligibility notification.

31. During a telephonic conversation between USAID and Anera on the same day, USAID also prohibited Anera from using USAID funds to pay DGC for work completed *before* USAID determined DGC to be ineligible to receive assistance funding.

32. On or about June 13, 2018, Anera submitted a letter to USAID seeking approval to use USAID funds to pay DGC for costs incurred during the contract performance period and prior to the ineligibility notification. **Exhibit 4**. In that letter, Anera stated that:

   (a) The costs had been incurred in connection with DGC's timely performance of work under the USAID-vetted and approved agreement;

   (b) DGC was not identified on OFAC's Specially Designated Nationals and Denied Persons List;

   (c) Payment for work performed prior to USAID's June 6, 2018 ineligibility notification did not appear to be prohibited by the Cooperative Agreement, Mission Order No. 21, or any other authority; and

   (d) Refusing to pay for work indisputably performed presents significant risks with respect to USAID's and Anera's credibility in the region, and poses additional risks for Anera, including legal actions for nonpayment.

33. On or about June 15, 2018, USAID reiterated that "no additional payments to the subcontractor by Anera will be reimbursed by USAID." **Exhibit 5**. USAID further advised: "[Anera] has indicated in its June 13, 2018, letter that $360,000 is due to [DGC] for work performed. That, or any other amount determined by further review and audit by either [Anera] or USAID, is unallowable under the subject Cooperative Agreement."

IV.  Anera's Challenge To USAID's Unexplained Decision.

34. On or about July 6, 2018, Anera filed a notification of dispute with the Agreement Officer ("AO"), challenging the basis for the retroactive disallowance of costs incurred by DGC. **Exhibit 6**; *see* 2 C.F.R. § 700.15(a) ("Any dispute under or relating to a grant or agreement will be decided by the USAID Agreement Officer.").

35. Anera explained that the Cooperative Agreement's clause entitled "Prohibition against Support for Terrorism"—which Anera flowed down into its subaward agreement with DGC—provided for termination in the event of a breach. However, it did not prohibit the use of U.S. funds to pay costs accrued at a time when the relevant entity had been authorized by USAID to perform contract work. Nor did any part of the Cooperative Agreement bar the use of USAID funding to pay DGC for costs properly accrued prior to the ineligibility notification, while DGC retained USAID's vetting approval for the work. Accordingly, USAID had no authority to deny funds to DGC for work performed before the ineligibility notification.

36. Anera identified the risks for Anera, USAID, and the U.S. Government resulting from a refusal to pay DGC for work performed in good faith. These risks (then and now) include exacerbating existing tensions, undermining Anera's and USAID's credibility and ability to achieve program goals, exposing Anera to legal action by DGC for nonpayment, and making it more difficult for Anera and its local staff to operate effectively and safely in the region.

V.    USAID's Final Decision Affirming DGC's Ineligibility.

37.    On August 8, 2018, the AO responded to Anera's July 6, 2018 notification of dispute by issuing a final decision ("Final Decision"). **Exhibit 7**.

38.    In the Final Decision, the AO did not address Anera's arguments regarding the terms of the Cooperative Agreement or the agreement with DGC. Instead, the AO reaffirmed the disallowance of costs to DGC, stating: "Regardless of when the work was performed by [DGC], no further payments to [DGC] by [Anera] will be reimbursed by USAID because of the material support statute at 18 U.S. Code Section 2339B, as substantially referenced in the Certification Regarding Terrorist Financing Implementing Executive Order 13224."

39.    The AO provided no explanation for why USAID had concluded that DGC violated the material support for terrorism statute, 18 U.S.C. § 2339B. Nor did the AO present any evidence of the alleged violation.

40.    Moreover, the AO stopped short of asserting that DGC itself is a foreign terrorist organization ("FTO").

41.    As such, the USAID did not have a rational basis for concluding that DGC was ineligible to receive U.S. funds because it (1) had no evidence that DGC provided material support to terrorists, and (2) did not conclude that DGC was an FTO.

VI.    Anera's Administrative Appeal of USAID's Final Decision.

42.    Anera administratively appealed the AO's Final Decision with USAID on or about September 6, 2018 ("Administrative Appeal"). **Exhibit 8**; *see also* **Exhibit 7** at 1 ("If [Anera] disagrees with this Final Decision, [it] may appeal the decision to the Assistant Administrator, Bureau for Management."); 2 C.F.R. § 700.15(b) ("Decisions of the USAID Agreement Officer will be final unless, within 30 calendar days of receipt of the decision, the recipient appeals the

decision to USAID's Assistant Administrator, Bureau for Management, or designee as delegated in Agency policy.").

43. In its Administrative Appeal, Anera argued that the AO's reliance on 18 U.S.C. § 2339B as the basis for prohibiting U.S. funds to pay DGC for work actually performed was misplaced.

44. 18 U.S.C. § 2339B criminalizes any person's conduct that provides "material support" to an FTO.

45. There was, and is, ample evidence that DGC is *not* an FTO:

   (a) DGC is *not* listed on the Secretary of State's list of Foreign Terrorist Organizations;

   (b) DGC is *not* identified as an FTO by Executive Order 13224, or by any of the press releases and notices issued by the Federal Register; *and*

   (c) DGC is *not* included on OFAC's sanctions lists.

46. Nor has USAID presented *any* evidence that DGC has engaged in or otherwise supported any terrorist activities.

47. Likewise, Anera is unaware of any evidence that DGC has engaged in or otherwise supported any terrorist activities.

48. Accordingly, Anera requested that USAID provide supporting evidence (noting that sensitive information could be conveyed in a secure or confidential manner).

VII. Communications with USAID Regarding Administrative Appeal.

49. On or about September 24, 2018, USAID requested additional documents from Anera in furtherance of USAID's review of Anera's administrative appeal, which Anera timely provided.

50. On or about November 5, 2018, USAID informed Anera that "more time [was] needed for analysis of [Anera's] appeal and preparation of a decision." **Exhibit 9**.

51. As USAID continued to review Anera's appeal, Anera kept USAID apprised of developments regarding DGC. On or about November 29, 2018, Anera provided USAID with a copy of a letter Anera received from DGC's counsel threatening legal action against Anera. **Exhibit 10**. USAID confirmed receipt of this update and indicated the letter would be added to USAID's file regarding the administrative appeal.

52. In or about January and February 2019, following inquiries from Anera regarding the status of its appeal, USAID advised the appeal was in its "internal clearance chain" and was taking a "bit longer" to review "[g]iven the sensitive nature of the issues involved[.]" **Exhibit 11**.

53. In or about April 2019, Anera notified USAID it had received a court summons regarding a claim of nonpayment filed by DGC, and of DGC's efforts to hold Anera's local accounts in escrow pending resolution of Anera's and DGC's dispute. **Exhibit 12**. During a related call with Anera's counsel, USAID advised that the issues underlying Anera's administrative appeal were being reviewed by the U.S. Department of Justice.

54. In or about August and September 2019, Anera requested an update regarding the still-pending appeal. Stating that USAID was "working expeditiously to bring [the matter] to a resolution," attorneys from the Office of General Counsel offered to schedule a call with Anera to discuss any questions Anera had regarding the status of the administrative appeal.

55. During calls in or about September 2019 between counsel for Anera and USAID's Office of General Counsel, Anera learned that the Department of Justice was continuing to review the issues set forth in Anera's appeal. Anera, in turn, provided USAID with an update regarding the dispute with DGC.

VIII. <u>USAID's Administrative Appeal Decision.</u>

56. On or about March 27, 2020, USAID issued its administrative appeal decision ("Final Appeal Decision"). **Exhibit 13**.

57. In its Final Appeal Decision, USAID simply asserted that "based on information gathered as a result of its vetting process, USAID has determined that a payment to DGC would constitute a violation of United States law."

58. USAID did not identify the "information gathered."

59. Based on its conclusory determination, USAID upheld its decision to withhold assistance money from Anera to pay DGC for approved work DGC performed prior to USAID's determination.

60. In its Final Appeal Decision, USAID provided that "[p]er Title 2 of the Code of Federal Regulations (C.F.R.) § 700.15(b), th[e Final Appeal D]ecision shall be final." *Id.* at 1; *see also* 2 C.F.R. § 700.15(b) ("Decisions of the USAID Agreement Officer will be final unless, within 30 calendar days of receipt of the decision, the recipient appeals the decision to USAID's Assistant Administrator, Bureau for Management, or designee as delegated in Agency policy."), (d) ("Decisions by the Assistant Administrator, Bureau for Management, or designee as delegated in Agency policy, will be final.").

IX. <u>DGC's Successful Arbitration Against Anera</u>

61. Under the terms of Anera's subaward agreement with DGC, Anera was obligated to pay DGC for the USAID-approved work DGC performed.

62. In or about April 2019, DGC filed a lawsuit against Anera in a Ramallah, West Bank court, seeking in part to recover the 1,207,396.77 NIS owed under the subaward agreement. The Ramallah court referred the dispute to arbitration.

63. The lawsuit and arbitration required Anera to retain local counsel and incur legal fees and costs (*e.g.*, arbitrator's fees) to defend itself.

64. USAID was aware at the time it issued its Final Decision and Final Appeal Decision that Anera would suffer consequential damages in the form of expending attorneys' fees and costs to defend against DGC's legal actions in the West Bank.

65. Anera notified USAID of this lawsuit, but its appeal of the Final Decision remained pending for almost one year.

66. On or about September 16, 2020, the arbitral tribunal ruled against Anera, concluding Anera owed DGC a total of 1,314,543.17 NIS (comprising the 1,207,396.77 NIS balance plus 107,146.40 NIS for claimed lost profits), as well as 9% interest (with varying accrual dates as set forth in the arbitration award).

67. DGC has moved to confirm its arbitration award in the Ramallah court.  The Ramallah court is set to rule on the matter and enter the judgment on December 12, 2021.  Alongside the legal fees and costs it has and continues to incur because of USAID's unsubstantiated decision to withhold approval for the use of U.S. funds to pay DGC for work USAID approved and DGC performed, Anera is facing liabilities currently exceeding $550,000.

68. USAID's decision to disallow retroactively the use of U.S. foreign aid to pay DGC for work pre-approved by USAID is arbitrary, capricious, and otherwise not in accordance with the law and must be set aside.  Indeed, the decision is plainly wrong.

69. Anera should not be made to suffer additional damage as a result of USAID's unlawful decision.  Nor should its humanitarian mission, or those already vulnerable recipients of Anera's good works, be harmed.

70. Anera now seeks judicial review of USAID's determination that DGC is ineligible for U.S. foreign aid funds and, a fortiori, its decision to withhold those funds to pay DGC for infrastructure work USAID approved and DGC has already performed.

COUNT I

(Judicial Review Under the Administrative Procedure Act, 5 U.S.C. §§ 701-706)

71. Anera incorporates the allegations contained in paragraphs 1 through 70 herein.

72. USAID is an agency within the meaning of the APA.

73. The Final Decision and Final Appeal Decision constitute a final agency action. As such, the Final Decision and Final Appeal Decision are reviewable by this Court. 5 U.S.C. § 704.

74. Anera has suffered a legal wrong and is adversely affected and aggrieved because of USAID's Final Decision and Final Appeal Decision. Anera is therefore entitled to judicial review of the Final Appeal Decision.

75. There is no evidence in the administrative record to justify USAID's decision that a payment of U.S. Government funds (*e.g.*, USAID assistance under the Cooperative Agreement) to DGC would constitute a violation of United States law pursuant to 18 U.S.C. § 2339B.

76. USAID's determination that DGC is ineligible for re-award and subsequent disallowance of the use of U.S. foreign aid funds to pay DGC for work performed is arbitrary, capricious and otherwise not in accordance with the law in violation of the APA. 5 U.S.C. § 706(2)(A).

77. USAID's determination that DGC is ineligible for re-award and subsequent disallowance of the use of U.S. foreign aid funds to pay DGC for work performed is unwarranted by the facts in violation of the APA. 5 U.S.C. § 706(2)(F).

78. This violation of the APA has caused, and will continue to cause, Anera monetary and reputational harm.

79. Pursuant to the APA, Anera respectfully requests that this Court hold unlawful and set aside USAID's Final Decision and Final Appeal Decision.

PRAYER FOR RELIEF

For the foregoing reasons, Anera respectfully requests that this Court enter judgment in favor of Anera and order the following relief:

1. DECLARE USAID's Final Decision and Final Appeal Decision unlawful;

2. DECLARE that DGC is eligible to receive U.S. foreign aid funds for work it performed for the PCID Program;

3. ORDER USAID to provide Anera with access to and approve to use all outstanding funding needed to pay for work performed by DGC prior to USAID's ineligibility notification (1,207,396.77 NIS);

4. ORDER USAID to compensate Anera for the lost profits (107,100 NIS) and interest payments (9% to be paid based on varying accrual dates as set forth in the arbitration award) owed by Anera to DGC as consequential damages suffered by Anera as a direct and proximate result of USAID's unlawful decisions and actions;

5. AWARD Anera its reasonable attorneys' fees and costs for any successful litigation pursuant to the Equal Access to Justice Act; and

6. GRANT such additional relief as this Court deems just and proper.

Dated: December 6, 2021

Respectfully submitted,

**American Near East Refugee Aid**

*By Counsel*

_____
Anand V. Ramana (D.C. Bar No. 489478)
Tamara Droubi (D.C. Bar No. 1025088)
Vedder Price P.C.
1401 New York Avenue, NW, Suite 500
Washington, DC 20005
(202) 312-3320 (phone)
(202) 312-3322 (fax)
aramana@vedderprice.com
tdroubi@vedderprice.com

*Attorneys for American Near East Refugee Aid*

Of Counsel:

DOUMAR MARTIN PLLC

George R. A. Doumar
D.C. Bar No. 415446
Doumar Martin PLLC
11350 Random Hills Road, Suite 700
Fairfax, VA 22030
Tel: 703-352-1300
Fax: 703-352-1301
gdoumar@doumarmartin.com