UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN NEAR EAST REFUGEE AID**,<br><br>              Plaintiff,<br><br>         v.<br><br>**UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT**,<br><br>              Defendant. | Case No. 21-cv-03184 (CRC) |

### MEMORANDUM OPINION AND ORDER

This opinion marks the third time the Court has weighed in on a dispute between American Near East Refugee Aid ("Anera"), an organization that provides humanitarian assistance to refugees in the Middle East, and the United States Agency for International Development ("USAID"). As detailed in previous opinions, the parties agreed in 2013 that USAID would fund Anera—and, through Anera, local sub-contractors—to build water and sanitation infrastructure in the West Bank and Gaza. In 2018, however, USAID decided that Anera could no longer use the agency's funds to pay one of the chosen sub-contractors for work performed on a West Bank water system. Anera challenged the agency's decision through the administrative appeals process and then filed this suit under the Administrative Procedure Act ("APA").

In its first foray into this case, the Court denied without prejudice USAID's motion to dismiss Anera's original complaint. In its second, the Court granted leave for Anera to file an amended complaint, finding the amendment would not be futile because it established that subject matter jurisdiction lay in this Court, rather than the Court of Federal Claims. Now, the Court turns to the agency's contention that the amended complaint fails to state a claim. Finding

that the complaint does not adequately allege that the agency's conduct was "unwarranted by the facts" in violation of 5 U.S.C. § 706(2)(F), the Court will grant USAID's motion to dismiss as to that claim.  But the same result does not hold for Anera's claim that the agency's decision was arbitrary and capricious.  Because the present record does not establish that USAID's decision was backed by substantial evidence and Anera has plausibly alleged that such evidence does not exist, the Court finds dismissal of Anera's arbitrary-and-capricious claim premature.

I. **Background**

As the Court has already detailed the factual background in its previous opinions, it will pick up where the second opinion left off.  See Am. Near E. Refugee Aid v. U.S. Agency for Int'l Dev. ("Anera I"), No. 21-cv-3184 (CRC), 2023 WL 10669678, at *1–2 (D.D.C. Mar. 21, 2023); Am. Near E. Refugee Aid v. U.S. Agency for Int'l Dev. ("Anera II"), No. 21-cv-03184 (CRC), 2023 WL 10669682, at *1–3 (D.D.C. Nov. 28, 2023).  In that opinion, the Court decided it had subject matter jurisdiction over the amended complaint and gave USAID another opportunity to file a motion to dismiss for failure to state a claim.  Anera II, 2023 WL 10669682, at *3.  USAID did so and now argues that both of the claims presented in Anera's amended complaint fall short.  Though Anera included the two claims under the umbrella of a single count, Anera's complaint lists two sub-counts that invoke separate prongs of 5 U.S.C. § 706, which governs the scope of judicial review under the APA.  Anera claims USAID's action was both "arbitrary, capricious, and otherwise not in accordance with the law" under § 706(2)(A) and "unwarranted by the facts" under § 706(2)(F). Am. Compl. ¶¶ 100–01 (citing 5 U.S.C. §§ 706(2)(A), (F)).  USAID moves to dismiss both sub-counts under Federal Rule of Civil Procedure 12(b)(6).

2

## II. Legal Standard

Dismissal under Rule 12(b)(6) is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim, the Court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1129 (D.C. Cir. 2015). "[D]etailed factual allegations" are not necessary, but the complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Banneker Ventures, 798 F.3d at 1129 (cleaned up) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

When evaluating a Rule 12(b)(6) motion, "a court generally does not consider matters beyond the pleadings." R.J. Reynolds Tobacco Co. v. Dep't of Agric., 130 F. Supp. 3d 356, 369 (D.D.C. 2015). The court may, however, "consider a document that a complaint specifically references," Banneker Ventures, 798 F.3d at 1133, or "documents upon which the plaintiff's complaint necessarily relies," Ward v. D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119–20 (D.D.C. 2011) (cleaned up).

## III. Analysis

The present motion—a motion to dismiss APA claims on 12(b)(6) grounds—is an unusual one as "[s]ummary judgment is [ordinarily] the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." R.J. Reynolds Tobacco Co., 130 F. Supp. 3d at 369

(alteration in original) (cleaned up).  But that is not to say a 12(b)(6) motion is never appropriate in the APA context.  The D.C. Circuit has instructed that district courts can "reach[] the merits at the 12(b)(6) stage" if the issue "on review is a question of law, and only a question of law." Marshall Cty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  And, of course, a 12(b)(6) motion is also the proper mechanism to evaluate whether the factual allegations in the complaint state an APA violation.  See, e.g., Voinche v. Obama, 428 F. App'x 2, 4–5 (D.C. Cir. 2011) (per curiam) (affirming the district court's dismissal of APA claims because the complaint "fail[ed] to state a claim upon which relief c[ould] be granted").

USAID's motion invokes both grounds for dismissal.  The agency maintains that, as a matter of law, its conduct was not arbitrary and capricious or unwarranted by the facts and that, in any event, Anera has not adequately pled violations of either prong of § 706.  See generally Renewed Mot. Dismiss at 10 ("Anera has not and cannot plausibly allege that USAID's decision[s]" were "arbitrary and capricious" under § 706(2)(A) or "unwarranted by the facts" under § 706(2)(F).).  The Court agrees with USAID as to Anera's § 706(2)(F) claim; the organization failed to allege that the agency's action was "unwarranted by the facts" in violation of the APA.  But the Court finds review of the administrative record necessary to resolve Anera's § 706(2)(A) claim.  The Court will start there and then return to § 706(2)(F).

    A.  Arbitrary and Capricious

Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Auto. Ins. Co.,

463 U.S. 29, 43 (1983) (cleaned up).  The agency is entitled to a "presumption of regularity," Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971), and courts must defer to the agency's expertise, see State Farm, 463 U.S. at 43.  But, though a court may not substitute its judgment for the agency's, it is axiomatic that the agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (cleaned up); see also Pol'y & Rsch., LLC v. Dep't of Health & Hum. Servs., 313 F. Supp. 3d 62, 72 (D.D.C. 2018).  This connection need not be clearly articulated but merely reasonably discernible.  Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).  Moreover, an agency decision must be supported by substantial evidence.  See Cablevision Sys. Corp. v. FCC, 597 F.3d 1306, 1310 (D.C. Cir. 2010).[1]  "'Substantial evidence' is simply such relevant evidence as a reasonable person might accept as proof of a conclusion." Jifry v. FAA, 370 F.3d 1174, 1181 (D.C. Cir. 2004).

    USAID levels two attacks on Anera's arbitrary-and-capricious sub-count.  First, it claims Anera failed to plead a § 706(2)(A) violation stemming from what USAID terms its "vetting"

---

[1] Section 706 of the APA lists the substantial evidence standard separate from the arbitrary-and-capricious standard, see 5 U.S.C. §§ 706(2)(A) (arbitrary and capricious), 706(2)(E) (substantial evidence), and § 706(2)(E) applies only to formal adjudications, see Phx. Herpetological Soc'y, Inc. v. U.S. Fish & Wildlife Serv., 998 F.3d 999, 1005 (D.C. Cir. 2021).  Therefore, "where, as here, [a court] review[s] an informal adjudication, [it] technically do[es] not apply the 'substantial evidence' standard of § 706(2)(E)." Nat'l Distribut. Servs., Inc. v. Dep't of Trans., 650 F. App'x 32, 33 (D.C. Cir. 2016).  Instead, it applies the arbitrary-and-capricious standard of § 706(2)(A), which incorporates § 706(2)(E)'s substantial-evidence requirement.  See id. ("[I]n their application to the requirement of factual support[,] the substantial evidence test and the arbitrary or capricious test are one and the same." (cleaned up)); Safe Extensions, Inc. v. FAA, 509 F.3d 593, 604 (D.C. Cir. 2007) ("[An] informal adjudication[ ] . . . must be supported by substantial evidence—otherwise it would be arbitrary and capricious." (cleaned up)).  The two standards, however "do differ as to the allowable origins of factual support and, as a consequence, how those facts are assessed." Phx. Herpetological Soc'y, 998 F.3d at 1005–06.  When reviewing an informal adjudication under § 706(2)(A), "common sense and predictive judgements [can] be attributed to the expertise of an agency . . ., even if not explicitly backed by information in the record." Id. at 1006.

decision. Second, in what is more a defense than an attack, the agency asserts that its final agency decision was not arbitrary and capricious as a matter of law. The Court takes each up in turn.

1. *Failure to State a Claim*

As for USAID's first attack, the agency sub-divides its decision into two parts: (1) the "underlying vetting decision finding Doofish ineligible" and (2) "the decision to disallow payments to Doofish." See Renewed Mot. Dismiss at 13.[2] The agency then devotes much ink to suggesting that Anera failed to "allege any APA violation arising from th[e] vetting decision" because any allegations to that effect were "conclusory" or ran contrary to the agency's representations. Renewed Mot. Dismiss at 13; Reply at 5.

This argument falters at its premise. Whether the "vetting" and "payment" determinations were one decision, two decisions, or a slew of intermediate choices the agency made, the final agency decision treats them as one and the same. The decision states as follows:

> The material support statute provides criminal penalties for "whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so." 18 U.S.C. § 2339B(a)(1). In its appeal, ANERA argues that this provision only applies to organizations designated as a "foreign terrorist organization," and that [Doofish] is not designated as such.

---

[2] As the Court understands it, USAID seeks to highlight a different distinction than one the Court previously drew. In its most recent opinion, the Court parsed the difference between USAID's decision to prohibit payment for future work (the "re-award" decision) and the decision to disallow payment for already performed work (the "reimbursement" decision). See Anera II, 2023 WL 10669682, at *2. In its current briefing, however, USAID tries to distinguish between the agency's "vetting" determination and its decision, stemming from that vetting determination, that Doofish was ineligible to receive payment for either past or future work. See, e.g., Renewed Mot. Dismiss at 13. Anera's briefing takes a hybrid approach, contrasting the "ineligibility" decision and the "reimbursement" decision. See, e.g., Opp'n at 8 ("USAID anchors its attack on Anera's pleading of an APA challenge to the reimbursement decision to the 'undisputed' validity of its ineligibility decision."). Though the parties appear to be speaking past each other, USAID's distinction between the vetting and ineligibility decisions is not material. As the Court will explain, those two decisions coalesce.

6

> USAID's vetting unit is specifically tasked with identifying connections to organizations that engage in or have connections to terrorist activity. See Foreign Operations, Export Financing and Related Programs Appropriations Act, 2006, P.L. 109-102, § 559(b), 119 Stat. 2172, 2222. In this case, based on information gathered as a result of its vetting process, USAID has determined that a payment to [Doofish] would constitute a violation of United States law.

Am. Compl., Ex. 13 at 2–3 (cleaned up). As this explanation suggests, USAID did not conclude that Doofish was an FTO. Indeed, the parties do not dispute this point, and the State Department, which is tasked with assigning FTO designations, has never given the designation to Doofish. See U.S. Dep't of State, Bureau of Counterterrorism, "Foreign Terrorist Organizations"[3]; see also 8 U.S.C. § 1189 (empowering the Secretary of State to designate FTOs). More importantly, however, the final agency decision does not suggest that the agency reached any freestanding determination about Doofish's status as a terrorist organization—as an FTO or otherwise. Instead, all the decision states is that "based on information gathered as a result of its vetting process, USAID has determined that a payment to [Doofish] would constitute a violation of United States law." Am. Compl., Ex. 13 at 3. In other words, the only "vetting decision" the agency claims to have made is a decision about Doofish's eligibility for payment. USAID's distinction between the "vetting" and "payment" decisions thus does not find purchase in the record. Accordingly, even assuming Anera failed to allege a violation of the vetting decision, the Court will not fault it for taking the agency at its word and treating the decisions as a single, unified determination.

---

[3] https://perma.cc/E6B4-SKZM.

## 2. *Arbitrary and Capricious as a Matter of Law*

Next, USAID asserts that its final agency decision was not arbitrary and capricious as a matter of law. USAID tries to bolster its decision on two grounds, claiming it (1) correctly interpreted 18 U.S.C. § 2339B to proscribe payment to Doofish and (2) adequately explained the basis for that decision. Renewed Mot. Dismiss at 10–13. Though the Court agrees that the agency's statutory interpretation is at least plausibly correct, it cannot determine based on the current record that the agency's explanation of its decision is sufficient.

First, USAID's interpretation of 18 U.S.C. § 2339B. The statute provides:

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life.

18 U.S.C. § 2339B(a)(1). The statute defines "terrorist organization" to mean "an organization designated as a terrorist organization under section 219 of the Immigration and Nationality Act," codified at 8 U.S.C. § 1189. Id. §§ 2339B(g), (g)(6); see also 8 U.S.C. § 1189. As noted, Doofish is not a designated FTO under § 1189. But USAID contends that its decision was not arbitrary and capricious because "whether or not Doofish is itself is a designated terrorist organization is not the end of the relevant legal inquiry." Renewed Mot. Dismiss at 12 n.3.

The Court agrees with USAID's interpretation—at least in principle. As other courts have recognized, a party can violate § 2339B(a)(1) by providing material support to an organization that itself is not an FTO. In Goldberg v. UBS AG, for example, plaintiffs brought claims against the bank UBS under the civil-remedy provision of the Anti-Terrorism Act, 18 U.S.C. § 2333(a), on the ground (among others) that UBS had committed acts of international terrorism in violation of 18 U.S.C. § 2339B(a)(1). 660 F. Supp. 2d 410, 413–14 (E.D.N.Y. 2009). The court found that, even though UBS had not provided funds directly to an FTO, it

8

could still be liable under § 2339B(a)(1) if it "(1) had knowledge that the ultimate beneficiary was an FTO, or (2) either of the entities to which defendant provided direct support . . . can be said to have been acting as agents of [an FTO]. . . ." Id. at 432; see also Strauss v. Credit Lyonnais, S.A., No. 06-cv-0702 (CPS), 2006 WL 2862704, at *11 (E.D.N.Y. Oct. 5, 2006) (finding plaintiff adequately pled civil liability under § 2339B on the ground that the recipient of funds was an agent of an FTO).[4]  Likewise in United States v. Rahmani, another court upheld a criminal indictment under § 2339B even though it did not allege that the defendants provided direct material support to an FTO.  209 F. Supp. 2d 1045, 1052 (C.D. Cal. 2002), rev'd on other grounds sub nom. United States v. Afshari, 426 F.3d 1150 (9th Cir. 2005).  Because the indictment charged that the defendants "solicit[ed] donations" for a "front organization" of an FTO, "know[ing]" and "inten[ding]" for the donated funds to be directed to the FTO, the court found "no defect in the indictment warranting dismissal." Id. (cleaned up).  In short then, under certain scenarios, a payment to a non-FTO can violate § 2339B.

But that is not the end of story.  Even though § 2339B may sometimes criminalize payment to entities that are not themselves FTOs, the arbitrary-and-capricious standard requires the agency to explain why payment to Doofish, in particular, would violate § 2339B.  USAID claims that, as a matter of law, it satisfies that standard.  See Renewed Mot. Dismiss at 12 ("[T]he Agency satisfied the requirement that it 'adequately explain its result.'" (cleaned up)).

---

[4]  In two opinions, the latter of which both parties cite, the D.C. Circuit held that, under 8 U.S.C. § 1189, the Secretary of State could designate as FTOs the aliases and agents of FTOs. See Nat'l Council of Resistance of Iran v. Dep't of State, 251 F.3d 192, 200 (D.C. Cir. 2001) (aliases); Nat'l Council of Resistance of Iran v. Dep't of State, 373 F.3d 152, 157 (D.C. Cir. 2004) (agents).  Though these cases acknowledged that an FTO-designation triggers consequences under 18 U.S.C. § 2339B, neither case had occasion to interpret the scope of that provision.  Nat'l Council of Resistance, 251 F.3d at 196; Nat'l Council of Resistance, 373 F.3d at 154.

But the Court cannot resolve that issue on a motion to dismiss. To adequately explain its result, the agency's rationale must both be discernible and backed by substantial evidence. See Bowman Transp., 419 U.S. at 286 ("[T]he agency's path m[ust] reasonably be discerned.") Safe Extensions, Inc., 509 F.3d at 604 ("[An] informal adjudication[ ] . . . must be supported by substantial evidence" (cleaned up)). Though the agency's path is reasonably discernible, the present record—made up of just the exhibits to the amended complaint—does not demonstrate that USAID's decision was rooted in substantial evidence.

Starting with the clarity of the agency's explanation of the result it reached, the Court finds the final agency decision sufficient. See Fox v. Clinton, 684 F.3d 67, 75 (D.C. Cir. 2012) (reviewing the "the agency's final judgment in its informal adjudication" to assess whether the agency's decision was "based on reasoned decisionmaking"). That decision effectively made three points: (1) 18 U.S.C. § 2339B(a)(1) criminalizes payments to FTOs, (2) USAID's vetting unit is tasked "with identifying connections to organizations that engage in or have connections to terrorist activity," and (3) "based on information gathered as a result of its vetting process," USAID determined that a payment to Doofish would violate § 2339B. Am. Compl., Ex. 13 at 2–3. To be sure, this decision is not a "model of analytic precision." Dickson v. Sec'y of Def., 68 F.3d 1396, 1404 (D.C. Cir. 1995). Namely, it does not spell out the interpretation of § 2339B offered in the agency's briefs—*i.e.*, that the statute criminalizes payment not only to FTOs but also to organizations with connections to FTOs. But, even with its faults, the basis for the action is "set forth with [enough] clarity as to be understandable." SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). When read together, the three points in the final decision make clear that, in the agency's judgment, payment to Doofish would violate § 2339B because of its connections to

FTOs. Thus, the Court is not "compelled to guess at the theory underlying the agency's action." Id. at 196–97.

Moreover, the agency was consistent throughout the administrative appeals process that it was proscribing payment because of 18 U.S.C. § 2339B. Cf Farrell v. Blinken, 4 F.4th 124, 137–39 (D.C. Cir. 2021) (finding agency action arbitrary and capricious when it "communicated multiple inconsistent requirements" to the applicant). After Anera disputed the initial ineligibility decision, the designated "Agreement Officer" issued a decision that USAID could not reimburse Anera because of the "material support statute at 18 U.S. Code Section 2339B, as substantially referenced in the Certification Regarding Terrorist Financing Implementing Executive Order 13224." Am. Compl., Ex. 7 at 1. Then, as described, the final agency decision reached the same conclusion, determining payment would run afoul of § 2339B. Id., Ex. 13 at 2–3. In sum, the agency's decision was reasonably discernible.

The agency does not fare as well, however, when it comes to the requirement that its decision be backed by substantial evidence. As noted, to pass muster, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." State Farm, 463 U.S. at 43 (cleaned up). The "critical step" in this process is "connecting the facts to the conclusion." Dickson, 68 F.3d at 1405; see also City of Santa Monica v. FAA, 631 F.3d 550, 554–55 (D.C. Cir. 2011) (examining whether each finding underpinning the agency's conclusion "was rationally based on facts for which there was substantial evidence in the record").

At present, the agency has offered no facts to support its findings. This omission is understandable given the agency's representation that its ineligibility determination relied on classified intelligence information. Renewed Mot. Dismiss at 14. But, even if the evidence in

11

the record is classified, the agency must still "show [its] work." Kirwa v. Dep't of Def., 285 F. Supp. 3d 257, 270 (D.D.C. 2018) (quoting Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017)); see also id. ("APA review may be limited, but it involves more than a court rubberstamping action based on bare declarations from the agency amounting to 'trust us, we had good national security reasons for what we did.'" (cleaned up)).  Of course, to protect classified parts of the record, the Court may review documents *ex parte* and *in camera*.  See, e.g., Jifry, 370 F.3d at 1182 ("[T]he court has inherent authority to review classified material *ex parte, in camera* as part of its judicial review function."); see also Jibril v. Mayorkas, No. 23–5074, slip op. at 13–15 (D.C. Cir. May 14, 2024) (citing same).  Indeed, though it does not govern the Court's review here, § 1189—the statute authorizing the Secretary of State to designate FTOs—specifically contemplates that classified information may "be disclosed to a court ex parte and in camera for purposes of judicial review."  8 U.S.C. § 1189(a)(4)(B)(iv)(II).  But, whether parts of the record are classified or not, the agency must still "produce an administrative record that delineates the path by which it reached its decision" "to allow for meaningful judicial review." Occidental Petroleum Corp. v. SEC, 873 F.2d 325, 339 (D.C. Cir. 1989).  It has not done so, and therefore dismissal of Anera's arbitrary-and-capricious sub-count would be premature.

    B.  Unwarranted by the Facts

The same cannot be said for Anera's other sub-count.  Under the APA, courts must set aside agency action that is "unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." 5 U.S.C. § 706(2)(F).  The Supreme Court has limited *de novo* review under this provision to two scenarios: (1) "where there are inadequate factfinding procedures in an adjudicatory proceeding" or (2) "where judicial proceedings are brought to enforce certain administrative actions."  Camp v. Pitts, 411 U.S. 138, 141–42 (1973) (citing

Citizens to Pres. Overton Park, 401 U.S. at 415).  Though at first blush Anera's challenge might appear to fit the first scenario, it has failed to plead facts sufficient to withstand dismissal.

"The 'inadequacy' standard is an extraordinarily difficult one to meet." Gonzalez Boisson v. Pompeo, No. 19-cv-2105 (JDB), 2020 WL 4346913, at *2 (D.D.C. July 29, 2020); see also Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) (*De novo* review is permitted in "rare circumstances.").  The D.C. Circuit has "never applied de novo review in an APA case" and has "stated in dicta that 'procedures must be severely defective before a court proceeding under the APA can substitute de novo review for review of the agency's record.'" Zevallos v. Obama, 793 F.3d 106, 112 (D.C. Cir. 2015) (quoting Nat'l Org. for Women v. Soc. Sec. Admin., 736 F.2d 727, 745–46 (D.C. Cir. 1984) (Mikva & McGowan, JJ., concurring)). Moreover, "the Supreme Court has suggested that factfinding procedures can be adequate even where an agency adjudication is based only on review of the administrative record, with no formal oral hearing or issuance of findings of fact." Gonzalez Boisson, 2020 WL 4346913, at *2 (citing Camp, 411 U.S. at 141–42).

Anera has not met this high standard.  It alleges that USAID "had no evidence that [Doofish] provided material support to terrorists" but does not suggest the agency's procedures were deficient.  Am. Compl. ¶ 59.  To the contrary, the amended complaint catalogs the procedures USAID had to follow in vetting Doofish.  See Am. Compl. ¶ 7 ("USAID's Anti-Terrorism Procedures, described in Amended and Restated Mission Order No. 21 ('Mission Order 21') and effective since October 3, 2007, 'establish standard procedures for vetting across all U.S. Government agencies providing assistance for the West Bank and Gaza.'"); see also id. ¶¶ 38, 47 (describing vetting requirements imposed by the 2016 and 2018 federal appropriations bills).  Moreover, to the extent Anera's "no evidence" allegation supports an inference that the

13

agency's procedures were defective, other parts of the amended complaint undercut this allegation. The complaint acknowledges that USAID claimed to have gathered "information . . . as a result of its vetting process" that payment to Doofish would be illegal. Id. ¶ 78. And, indeed, what really seems to be the gravamen of the complaint is that the agency failed to "identify" for Anera "the 'information gathered.'" Id. These allegations are sufficient to make out an arbitrary-and-capricious claim, but they fail to "nudge[]" the § 706(2)(F) claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. The Court thus grants USAID's motion as to that sub-count.

### IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [ECF No. 31] Defendant's Renewed Motion to Dismiss is GRANTED in part and DENIED in part. It is further

**ORDERED** that Defendant answer the amended complaint by June 24, 2024.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: May 24, 2024